UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LUKE FIZULICH,

                              *Plaintiff,*

v.                                             No. 1:22-cv-1190

DWAYNE KILLINGS, and
STATE UNIVERSITY OF NEW YORK
AT ALBANY,

                              *Defendants.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

NESENOFF & MILTENBERG, LLP            STUART BERNSTEIN, ESQ.
*Attorneys for Plaintiff*             JANINE L. PERESS, ESQ.
363 Seventh Avenue, 5th Fl.
New York, New York 10001


DREYER BOYAJIAN LLP                   WILLIAM J. DREYER, ESQ.
*Attorneys for Defendant Killings*
75 Columbia Street
Albany, New York 12210


HON. LETITIA JAMES
Attorney General for the             MARK G. MITCHELL, ESQ.
    State of New York                Ass't Attorney General
*Attorneys for Defendant University*
The Capitol
Albany, New York 12224


DAVID N. HURD
United States District Judge


**MEMORANDUM-DECISION and ORDER**

## I.  <u>INTRODUCTION</u>

Plaintiff Luke Fizulich ("Fizulich" or "plaintiff") brings this action against defendants Dwayne Killings ("Killings") and State University of New York at Albany (the "University").  Plaintiff brings tort claims for assault and battery and tortious interference with a contract against Killings, as well as claims for violations of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d-7(b) ("Title VI"), and breach of contract against the University.

Killings has answered the amended complaint, but the University moves to dismiss Fizulich's Title VI and breach of contract claims pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6).  The motion has been fully briefed, and the Court will now consider it on the basis of the parties' submissions without oral argument.

## II. <u>BACKGROUND</u>[1]

Fizulich, a white male, is a former student—and member of the men's basketball team—at the University.  Dkt. No. 17 ("Am. Compl.") ¶ 1. Plaintiff alleges that on November 24, 2021, Killings, the Head Coach of Men's Basketball and a black male, assaulted him during an away game against Eastern Illinois University.  *Id*. ¶¶ 2–3.  Other basketball players on

---

[1] The facts are taken from the amended complaint and any and all documents attached to it, because for the purposes of a Rule 12(b)(6) motion, this Court must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff[.]"  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

the team, as well as other coaches, witnessed the incident.  *Id*. ¶ 3.  On February 27, 2022, towards the end of the season, plaintiff reported the assault to the University.  *Id*. ¶ 6.

The University investigated the assault incident and ultimately imposed penalties on Killings, which consisted of a five game suspension from coaching and a fine.  Am. Compl. ¶¶ 7, 59.  Plaintiff claims that the results of this investigation confirmed his account of the assault.  *Id*. ¶¶ 7, 54.  After finding Killings responsible, the University allegedly planned to terminate his employment.  *Id*. ¶¶ 7, 55.

Fizulich further alleges that, following the decision to terminate him, Killings immediately contacted a public relations firm to put pressure on the University.  Am. Compl. ¶¶ 8, 56.  The same day that Killings contacted a public relations firm, plaintiff was "outed" by newspapers as the assault complainant.  *Id*.  Killings' public relations firm also rallied business and civil rights leaders, who protested the University's pending termination decision. *Id*. ¶¶ 9, 58.

Following this outcry and pressure from the local business and civil rights leaders, the University reversed its decision to terminate Killings. Am. Compl. ¶¶ 9, 59.  Fizulich alleges that the University's decision to reverse Killings' termination was based purely on his race, and that it showed preference to his assaulter because of his race.  *Id*. ¶ 60.

3

Within two weeks of its reversal of Killings' termination, the University at Albany Foundation named a prominent and outspoken member of the civil rights group who advocated against Killings' termination as one of their 2022 Citizen Laureates.  Am. Compl. ¶¶ 10, 59.  When Fizulich learned of these developments through the media, he immediately contacted University administrators multiple times to discuss their decision to reverse Killings' termination.  *Id.* ¶¶ 11–12, 61.  The University refused to discuss its decisions with him.  *Id.* ¶¶ 11, 61.

As a result of the above events, Fizulich now alleges that the University discriminated against him, a white student, and a victim of an assault perpetrated by Killings, a black coach, when it chose to reverse its decision to terminate Killings following pressure from civil rights leaders in the community, thereby ignoring plaintiff's complaint and well-being because of his race.  Am. Compl. ¶ 99.  By reversing its decision to terminate Killings, plaintiff alleges that the University forced him to play under conditions that were unbearable, effectively excluding him from participation in his sport and denying him the benefits that brought him to the University in the first place.  *Id.* ¶ 100.  In other words, plaintiff asserts that the University chose to keep Killings because of his race, which caused plaintiff harm and, in essence, froze him out of playing collegiate basketball.  *Id.* ¶ 101.

Fizulich further alleges that the University's Campus and Workplace Violence Prevention Policy and Program (the "Violence Policy") promises its students, including plaintiff, certain community standards to promote safety, an environment that is free of violence, and a zero-tolerance policy to handle acts of violence. Am. Compl. ¶¶ 63–64, 109. In plaintiff's view, the University was required to uphold its zero-tolerance requirement under the Violence Policy. *Id.* ¶ 110.

Finally, Fizulich alleges that, despite finding Killings responsible for the assault, the University put no measures in place to prevent further harm to him and ensure his safety as a member of the men's basketball team. Am. Compl. ¶¶ 68, 113. The University knew that plaintiff was unable to handle playing for the coach who physically assaulted him, and, nonetheless, forced plaintiff to continue his collegiate and basketball career under these conditions. *Id.* ¶ 15. Plaintiff concludes that the University's failure to offer any protective measures to ensure his safety, as required by the Violence Policy, placed him in danger and caused his constructive termination from the basketball team. *Id.* ¶ 68.

## III. <u>LEGAL STANDARD</u>

### 1. **Rule 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional

power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In determining the existence of subject matter jurisdiction, a district court may consider evidence outside the pleadings." *Saleh v. Holder*, 84 F. Supp. 3d 135, 137–38 (E.D.N.Y. 2014) (citing *Makarova*, 201 F.3d at 113).

A motion to dismiss for sovereign immunity under the Eleventh Amendment is properly brought pursuant to Rule 12(b)(1) as the Eleventh Amendment "reflects 'the fundamental principle of sovereign immunity [that] limits the grant of judicial authority in Art. III.'" *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 64 (1996) (citing *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 97–98 (1984)).

## 2. Rule 12(b)(6)

"To survive a Rule 12(b)(6) motion to dismiss, the 'factual allegations must be enough to raise a right to relief above the speculative level.'" *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, the complaint must contain sufficient factual matter that it presents a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In assessing the plausibility of a complaint, it is "to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor." *Ginsburg*, 839 F. Supp. 2d at 540. The complaint may be supported by "any

written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation omitted).

## IV. <u>DISCUSSION</u>

Fizulich brings two causes of action related to the University's failure to terminate Killings after the alleged assault: (i) Count III alleges a Title VI violation; and (ii) Count IV alleges that the University breached its Violence Policy, *i.e.*, a contract with plaintiff.  The University moves to dismiss both claims.

### 1. Title VI

The University first moves to dismiss Count III, Fizulich's Title VI cause of action, for failure to state a claim.  Dismissal at this time is not warranted.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  Thus, to state a claim for Title VI discrimination, a plaintiff must allege that: (i) the defendant discriminated against him on the basis of race, color, or national origin; (ii) the discrimination was intentional; and (iii) the discrimination was a substantial or motivating factor for the defendant's actions.  *Eldars v. State*

7

*University of New York at Albany*, 2021 WL 4699221, at \*4 (2d Cir. Oct. 8, 2021) (citing *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001)).

While claims under Title VI are subject to the burden-shifting framework[2] established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas* to defeat a motion to dismiss, *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). Rather, at this early stage, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation," *Littlejohn*, 795 F.3d at 311, and the elements of a *prima facie* case[3] may serve as "a prism to shed light upon" such plausibility, *Lorefice v. New York,* 2022 WL 3577102, at \*5 (N.D.N.Y. Aug. 18, 2022) (citing *Littlejohn*, 795 F.3d at 311 n.9).

In the amended complaint, Fizulich details how the University investigated Killings, his basketball coach, after an incident where Killings assaulted plaintiff in the locker room. Under the University's Violence

---

[2] The three-part *McDonnell Douglas* burden-shifting framework requires a plaintiff to first successfully assert a *prima facie* claim against a defendant. *JF v. Carmel Cent. Sch. Dist.*, 168 F. Supp. 3d 609, 623 (S.D.N.Y. 2016). If plaintiff makes out a *prima facie* case, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for its conduct. *Id*. Plaintiff then has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id*.

[3] Under *McDonnell Douglas*, a plaintiff makes out a *prima facie* case for Title VI discrimination by showing that: (1) he is a member of a protected class; (2) he suffered an adverse action in pursuit of his education; (3) he was treated differently from similarly situated students who are not members of his protected class; and (4) he was qualified to continue in his educational pursuit. *Williams v. Pace Univ.*, 192 F. Supp. 3d 415, 422 (S.D.N.Y. 2016) (citation omitted).

Policy, it initially made the decision to terminate Killings for this assault. However, following pressure from business and civil rights leaders, who protested the University's termination of a black male, the University reversed its decision and allowed Killings to maintain his position as head coach of the men's basketball team. The University's decision to keep Killings employed had a detrimental effect on Fizulich—plaintiff informed the University that he was unable to play under Killings following the assault. But the University disregarded plaintiff's concerns, as well as its own Violence Policy, and instead showed preference to Killings.

Construing these statements liberally and drawing all inferences in favor of Fizulich, the amended complaint states a Title VI claim. While the allegations may not fit neatly into a Title VI analysis, they do support a minimal inference of discriminatory motivation—particularly when viewed (where applicable) through the lens of *McDonnell Douglas*. First, plaintiff, as a white male, is a member of a protected class. Second, the University's promotion of Killings' interests over plaintiff's could well constitute an adverse action for plaintiff. Indeed, with Killings remaining as the basketball coach following his assault of plaintiff, plaintiff was left with little choice but to resign from his beloved sport while studying at the University. Third, although plaintiff does not offer allegations concerning his treatment *vis a vis* other students outside of his protected class, this question is likely

better answered after the parties conduct discovery.  Similarly, there is little in the complaint regarding plaintiff's qualifications to continue as either a student or player at the University, though this issue may be better explored later in the case.

Taken together, the amended complaint plausibly alleges that the University intentionally discriminated against Fizulich, a white male, in favor of Killings, a black male, when it allowed the latter to remain employed as the school's men's basketball coach.  As alleged, the University's choice to retain Killings, despite his assault of plaintiff, one of its students, represents highly questionable decision-making.  So questionable, in fact, that it plausibly supports a minimal inference that the decision was colored by discriminatory motivation.

Accordingly, Fizulich's Title VI claim against the University survives dismissal.[4]

### 2.  Breach of Contract

The University next moves to dismiss Count IV, Fizulich's breach of contract claim, for lack of subject matter jurisdiction based on Eleventh Amendment immunity and for failure to state a claim.  Dismissal on the

---

[4]  Plaintiff's Title VI cause of action against the University survives dismissal, but, contrary to his allegation in paragraph 106 of the amended complaint, he may not pursue punitive damages on this claim.  Indeed, it is well-settled that Title VI only permits recovery of compensatory damages, not punitive damages.  *See Barnes v. Gorman*, 536 U.S. 181, 187–88 (2002).

former ground is appropriate and the University's latter argument need not be resolved.

The "Eleventh Amendment bars federal courts from entertaining suits brought by a private party against a State or one of its agencies absent consent, waiver, or where Congress expressly overrides immunity." *Perez v. General Motors, LLC*, 2015 WL 1823438, at *4 (N.D.N.Y. Apr. 21, 2015) (citation omitted). "It is well settled that 'the Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court.'" *Winokur v. Office of Court Admin.*, 190 F. Supp. 2d 444, 450–451 (E.D.N.Y. 2002) (quoting *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 540–541 (2002)).

"'For Eleventh Amendment purposes, SUNY is an integral part of the government of the State of New York and when it is sued the State is the real party.'" *Eldars*, 2021 WL 4699221, at *2 (quoting *Dube v. State Univ. of New York*, 900 F.2d 587, 594 (2d Cir. 1990)). "As to [a] breach of contract claim, there is no question that SUNY is a state agency entitled to Eleventh Amendment immunity." *Zhao v. State Univ. of New York*, 472 F. Supp. 2d 289, 320 (E.D.N.Y. 2007); *see also Mamot v. Board of Regents*, 367 Fed. App'x 191, 192-193 (2d Cir. 2010).

The University is an agency of New York state, and therefore, is entitled to sovereign immunity in the absence of consent, waiver, or abrogation by

Congress.  There is no indication that any of these three exceptions applies.
Accordingly, Fizulich's breach of contract claim is barred as a matter of law
and must be dismissed.  *See Regents of the Univ. of California v. Doe,* 519
U.S. at 430–32 (1997) (affirming dismissal of breach of contract claim against
state university on Eleventh Amendment immunity grounds); *Eldars*, 2021
WL 4699221, at *2 (affirming dismissal of claims against SUNY Albany
based on Eleventh Amendment immunity); *Wolff v. State Univ. of New York
Coll. at Cortland*, 2016 WL 9022503, at *29 (N.D.N.Y. Feb. 5, 2016) ("SUNY
Cortland is an agency of New York State, and therefore, is entitled to
sovereign immunity, absent express waiver or abrogation—neither of which
apply here. Therefore, Plaintiff's breach of contract claim is barred as a
matter of law"), *aff'd*, 678 Fed. App'x 4 (2d Cir. 2017).[5]

## V. <u>CONCLUSION</u>

Therefore, it is

ORDERED that

1.  The University's motion to dismiss is GRANTED in part and DENIED
in part;

2.  Fizulich's breach of contract claim (Count IV) is DISMISSED;

---

[5] Given that Count IV is dismissed for lack of federal subject matter jurisdiction under Rule 12(b)(1), Article III deprives this Court of the power to dismiss it with prejudice.  *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017).  Accordingly, if plaintiff wishes, he has the option to pursue this claim in the appropriate state court.

3.  Fizulich's Title VI claim (Count III) survives dismissal;

4.  The University shall file an answer to Count III on or before August 3,

2023.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  July 20, 2023
Utica, New York.